E-FILED
Wednesday, 28 August, 2024  01:22:29 PM
Clerk, U.S. District Court, ILCD

Vince Faridani,
Pro Se Plaintiff
8471 Strom Park Drive
Melbourne, FL 32940
Phone: 954-774-1391
Email: VFaridani@hotmail.com

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

## DISTRICT OF ILLINOIS

Vince Faridani,

            Plaintiff,

Vs.

McKenna Capital, LLC,
Ryan McKenna, an Individual,
Sean McKenna, an Individual,
Eng Taing, an Individual
Touzi Capital, LLC,
Defendants,

Case No.:

**COMPLAINT FOR**
1. **Federal Securities Fraud**
2. **Violation of the Illinois Securities Law**
3. **Fraud and Deceit**
4. **Breach of Contract**
5. **Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act**
6. **Negligent Misrepresentation**
7. **Unjust Enrichment**

**JURY TRIAL DEMANDED**

COMES NOW, Vince Faridani, Pro Se Plaintiff, ("Plaintiff"), invoking the jurisdiction of this Honorable Court and seeking redress for grievances suffered due to the actions and omissions of McKenna Capital LLC, Ryan McKenna, CEO of McKenna Capital, and his brother Sean McKenna, COO, Touzi Capital LLC, Eng Taing, CEO of Touzi Capital, (collectively referred to herein as "Defendants"). Through this Complaint, Plaintiff outlines multiple counts of legal action, including Federal Securities Fraud, Violation of the Illinois Securities Law, Fraud and Deceit, Breach of Contract, and Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, arising from Defendants' coordinated scheme to mislead and defraud Plaintiff in a cryptocurrency mining investment venture. Herein, Plaintiff sets forth the facts and legal grounds upon which his claims are based and prays for relief as detailed in the subsequent sections of this Complaint.

## NATURE OF ACTION

1. This is a civil action brought by Plaintiff Vince Faridani to redress injuries sustained due to the fraudulent, deceptive, and unlawful practices of Defendants McKenna Capital LLC, Ryan and Sean McKenna, Touzi Capital LLC, Eng Taing. These Defendants, through a coordinated scheme, misrepresented the nature, benefits, and profitability of investments in a Bitcoin mining operation, leading to substantial financial losses for the Plaintiff.

2. Specifically, Defendants engaged in a pattern of making false promises and representations about the operations, financial returns, and security of investments in cryptocurrency mining. Despite raising significant capital and making explicit assurances to investors, including Plaintiff, Defendants failed to deliver on these promises, violating

principles of honesty and transparency required in the solicitation and management of investor funds.

3. This action asserts claims for relief based on violations of the Illinois Securities Law of 1953 (815 ILCS 5/), which governs the offer and sale of securities in the State of Illinois, and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/), which prohibits deception, fraud, and false pretenses in the conduct of trade or commerce. Additionally, this complaint asserts claims for common law fraud, breach of contract, and seeks compensatory and punitive damages, injunctive relief, and any other relief this Court deems just and proper.

4. Through this action, Plaintiff seeks to hold Defendants accountable for their misconduct, recover damages sustained as a result of Defendants' actions, and prevent Defendants from engaging in similar deceptive practices in the future. The relief sought herein is predicated on Defendants' acts and omissions that caused significant financial harm to Plaintiff, undermining the integrity of Illinois' financial and consumer marketplaces.

## **PARTIES**

5. Plaintiff Vince Faridani is an individual and a resident of Melbourne, Florida.

6. Defendant McKenna Capital LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 2516 Waukegan Rd #399, Glenview, IL 60025.

7. Defendant Ryan McKenna is an individual and the Chief Executive Officer of McKenna Capital LLC. At all relevant times, he acted within the scope of his authority as CEO and is believed to reside or conduct business at the principal place of business of McKenna Capital LLC in Glenview, Illinois.

8. Defendant Sean McKenna is an individual and a Chief Operating Officer of McKenna Capital LLC, residing or conducting business at the principal place of business of McKenna Capital LLC in Glenview, Illinois.

9. Defendant Touzi Capital LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located at 340 S Lemon Ave #8284, Walnut, CA 91789.

10. Defendant Eng Taing, is an individual and the Chief Executive Officer of Touzi Capital LLC.

## JURISDICTION AND VENUE

11. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (Diversity of Citizenship) because Plaintiff Vince Faridani is a citizen of the State of Florida, and all Defendants are citizens of states other than Florida, namely Illinois and California. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, thereby satisfying the requirements for federal diversity jurisdiction.

12. Additionally, this Court has jurisdiction over the state law claims pursuant to the supplemental jurisdiction granted under 28 U.S.C. § 1367, as these claims form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in the Central District of Illinois under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Defendant McKenna Capital LLC is based in Glenview, Illinois, within this district, and many of the misleading and fraudulent actions alleged herein were directed from and took place within this geographic location.

14. Additionally, Defendants have substantial contacts with this judicial district, making it a fair and just forum for the adjudication of this matter. Given the significant activities conducted by the Defendants in this district related to the allegations in this complaint, including the solicitation of investments and dissemination of false information, this Court is the most appropriate venue to resolve the disputes herein.

## STANDARD OF REVIEW

15. Plaintiff is a pro se litigant and has not hired an attorney. Courts have consistently held that pleadings filed by pro se litigants are entitled to a more lenient standard of review compared to those drafted by attorneys. This principle ensures that access to justice is not unduly hindered by procedural technicalities for individuals representing themselves.

16. The following cases illustrate the courts' commitment to this principle:

- "Plaintiff is pursuing his claim pro se. As such, his pleadings are held to a less stringent standard than those of an attorney. *See Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998)."

- "The Supreme Court has instructed federal courts to liberally construe the 'in artful pleading' of pro se litigants. *Eldridge v. Block*, 832 F.2d 1132,1137 (9th Cir. 1987)."

- A pro se pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)".

17. In light of these precedents, Plaintiff respectfully requests that this honorable court apply a lenient standard in reviewing his pleadings, consistent with the established legal principles governing pro se litigants.

## STATEMENT OF FACTS

18. Plaintiff Vince Faridani, motivated by the prospects of entering the burgeoning field of cryptocurrency mining, invested a significant amount of capital into a venture presented by Defendants McKenna Capital LLC, Ryan McKenna, CEO, his brother, Sean McKenna, COO, Touzi Capital LLC and its CEO Eng Taing. This investment was made in reliance on the representations and assurances provided by Defendants, which painted a picture of a highly lucrative, low-risk opportunity backed by cutting-edge technology and strategic industry insights.

19. Over a series of communications beginning in November 2021, Defendants engaged in an aggressive campaign to solicit investments from Plaintiff and others. Through email exchanges, webinars, and direct communications, Defendants promised unprecedented returns, minimal risks, and the implementation of advanced mining technology—all purportedly distinguishing their venture from others in the cryptocurrency mining sector.

20. On November 23, 2021, Defendants initiated the misleading campaign with an email that misleadingly advertised the potential profitability and security of the cryptocurrency mining venture. This marked the beginning of a series of communications designed not only to entice investment but to reassure investors of the soundness and future success of their investment.

21. In the months following the initial investment solicitation, Defendants McKenna Capital LLC, Ryan and Sean McKenna, Touzi Capital, Eng Taing, engaged in a deliberate campaign to portray the cryptocurrency mining venture as a burgeoning success, despite underlying operational and financial instabilities. Through a series of calculated

communications, Defendants crafted a narrative of unbridled success and exponential growth, misleading Plaintiff and other investors about the venture's actual condition.

• **On November 23, 2021,** Defendants initiated this deceptive campaign by proclaiming they had already secured $16 million in funding for the cryptocurrency mining project. This announcement was designed to convey a false sense of security to potential investors, suggesting a high level of trust and confidence from the market and implying the project's viability and attractiveness. The figure was presented without context, masking the operational realities and the speculative nature of the venture.

• **By December 3, 2021,** Defendants escalated their misleading assurances by claiming an increase in the fundraising total to $30 million. Accompanying this boast was a promise of uniquely favorable investment terms, purportedly adjusting standard expectations to offer significantly higher returns to investors. This move was calculated to create an illusion of exceptional opportunity and financial acumen on the part of Defendants, further enticing investment under false pretenses.

• **On February 1, 2022,** Defendants presented what they termed a "State of the Union" for the BTC mining operation. In this communication, they falsely asserted the securing of a new mining facility, which they claimed would promise significantly reduced operational costs and, consequently, increased profitability for investors. This announcement was particularly misleading, suggesting that Defendants had not only secured advantageous terms but were also on the cusp of realizing substantial profits, neither of which was rooted in the venture's actual financial or operational status.

• **March 23, 2022, marked another pivotal moment** in Defendants' scheme, with the announcement of an alleged $40 million raised. Defendants outlined grand plans for

7

deploying miners across strategic locations, purporting these developments would inflate both the returns to investors and the operational efficiency of the mining venture. This claim further distanced the narrative from the venture's struggling reality, misleading investors about the scale and potential success of the operation.

- **Between April and May 2022,** Defendants continued their deceptive practices by providing fabricated updates on the operational status and early successes of the mining operations. These updates significantly deviated from the grim reality of the venture's performance, painting a picture of progress and profitability that did not exist. Such communications were designed to maintain investor confidence and forestall inquiries into the venture's actual conditions, contributing to the facade of success that Defendants had meticulously constructed.

22. Throughout this period, Defendants' communications were marked by a consistent pattern of exaggeration, omission, and outright fabrication, all aimed at misleading investors about the venture's financial health and operational achievements. This calculated misinformation campaign served not only to attract additional investment under false premises but also to keep existing investors placated, thereby exacerbating the financial losses ultimately borne by Plaintiff and others deceived by Defendants' actions.

23. Plaintiff, relying on the detailed and seemingly well-substantiated projections provided by Defendants, was led to believe in the high profitability and low-risk nature of the venture, prompting his investment decision.

24. Contrary to the rosy picture painted by Defendants, the venture failed to deliver on nearly all accounts. The technology and operational advancements touted by Defendants either did

not materialize or fell significantly short of the promised capabilities, leading to operational inefficiencies and financial losses rather than the assured profits.

25. The financial losses sustained by Plaintiff as a direct consequence of Defendants' actions were not mere outcomes of market volatility or operational hiccups but were significantly exacerbated by Defendants' misrepresentations and mismanagement. These actions eroded the entirety of Plaintiff's investment, leaving him with substantial financial losses.

26. Defendants' conduct, as detailed herein, constitutes a deliberate and systematic effort to defraud investors. Through false promises and manipulated information, Defendants induced Plaintiff to invest under false pretenses, culminating in considerable financial losses for Plaintiff. This scheme to defraud not only highlights Defendants' disregard for truthful and transparent business practices but also underscores the need for judicial intervention to address and rectify the injustices endured by Plaintiff.

## **COUNT I**

### (Federal Securities Fraud)

27. Plaintiff incorporates Paragraphs 1 through 26, inclusive, of this Complaint, as though fully set forth herein.

28. This Count is brought pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

29. At all relevant times, Defendants engaged in the offer and sale of securities, as defined under the Exchange Act, to Plaintiff and others. The investments solicited and obtained by Defendants from Plaintiff were "securities" within the meaning of the Exchange Act.

30. Defendants, directly and indirectly, by use of means or instrumentalities of interstate commerce and by use of the mails, have:

    a. Employed devices, schemes, and artifices to defraud.

    b. Made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. Engaged in acts, practices, and courses of business which operated as a fraud and deceit upon the Plaintiff and other investors.

31. Specifically, Defendants misrepresented and omitted material facts related to the investment's value, the risks associated with the investment, the operational status of the cryptocurrency mining venture, and the use of investor funds.

32. Plaintiff and other investors relied on Defendants' representations in deciding to invest and subsequently maintain their investments in the venture. This reliance was reasonably placed, given Defendants' positions of trust and their affirmative representations about the venture's profitability, operational achievements, and future prospects.

33. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered significant financial loss. The value of Plaintiff's investment has been substantially diminished, and the promised returns and benefits have not materialized.

34. Defendants' actions, as described herein, were done knowingly or recklessly and for the purpose of misleading Plaintiff and other investors regarding the true nature of the investment opportunity presented.

## **COUNT II**

(Illinois Securities Law Violation)

35. Plaintiff incorporates Paragraphs 1 through 34, inclusive, of this Complaint, as though fully set forth herein.

36. This Count is asserted pursuant to the Illinois Securities Law of 1953 (the "Act"), specifically under 815 ILCS 5/12, which prohibits fraud in connection with the sale of securities within the State of Illinois.

37. At all pertinent times, Defendants engaged in the offer and sale of securities to Plaintiff and other investors within Illinois, thereby subjecting these transactions to the regulations and protections afforded by the Act.

38. Defendants, in the course of these transactions, committed acts constituting a violation of the Act, including but not limited to:

    a. Employing any device, scheme, or artifice to defraud in connection with the sale or offer of securities.

    b. Making untrue statements of material facts and omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

    c. Engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

39. Defendants' conduct as detailed herein, including their dissemination of materially false and misleading information about the cryptocurrency mining venture, its profitability, operational status, and the use of investor funds, directly contravenes the provisions of the Act intended to protect investors from fraudulent practices.

40. Plaintiff and other investors relied upon the representations made by Defendants in deciding to invest in the cryptocurrency mining venture. This reliance was justified based

on the information provided by Defendants at the time of the investment and the reasonable expectation that Defendants were complying with Illinois securities laws.

41. As a direct and proximate result of Defendants' violations of the Act, Plaintiff has suffered significant financial losses. The promised returns and operational success, which formed the basis of Plaintiff's investment decision, were never realized, leading to the substantial diminution in the value of Plaintiff's investment.

42. Defendants' actions were committed willfully and with the intent to deceive and defraud the Plaintiff and other investors, warranting not only compensatory damages but also punitive damages to deter such conduct in the future.

## **COUNT III**

(Fraud And Deceit)

43. Plaintiff incorporates Paragraphs 1 through 42, inclusive, of this Complaint, as though fully set forth herein.

44. At all relevant times, Defendants made false representations to Plaintiff and other investors regarding the nature, profitability, and risk of the investment in the cryptocurrency mining venture. These representations were made knowingly, or with reckless disregard for their truth, with the intent that Plaintiff and others rely upon them.

45. Defendants had a duty to provide accurate and truthful information to Plaintiff regarding the investment. Despite this duty, Defendants:

    a. Made material misrepresentations and omissions regarding the operational status and financial health of the cryptocurrency mining venture.

    b. Falsely represented the expected profitability and risk level of the investment.

c.   Failed to disclose significant risks and operational challenges known to them, which directly impacted the viability of the investment.

46. Additionally, the Defendants falsely represented specific rates of return and operational advancements that were either nonexistent or grossly exaggerated, such as:

- The Defendant's Claims in their investment presentation included: "Target IRR: 93% w/Realistic 5 Year Price Target" and "Equity Multiple: 7.5x Equity Multiple."

    - These figures suggest an exceptionally high return on investment that is not typical in the highly volatile Bitcoin market. Presenting such optimistic projections can create an unrealistic expectation of substantial profits among potential investors.

    - This exaggerated claim has led the Plaintiff to believe that the investment was exceptionally lucrative and almost guaranteed to yield high returns, thereby inducing them to invest under false pretenses. The claim lacks a balanced view of the inherent risks, making it seem more secure and profitable than it likely is.

- "Annual Returns: 12% a Year" and "Monthly Payout: 1% a Month"

    - Promising guaranteed returns in a high-risk investment like Bitcoin mining is highly misleading. Such guarantees are unrealistic and not reflective of the true nature of the investment's risks.

    - The Plaintiff was likely misled into believing that the investment was low-risk with stable and predictable returns. This assurance of guaranteed monthly and annual returns induced the Plaintiff to invest, under the impression that their capital was safe and would grow steadily. The actual

financial losses experienced by the Plaintiff were a direct result of relying on these false guarantees.

- "Quick Returns: 12 Months Return of Capital"
  - Promises of a quick return of capital are highly optimistic and do not account for the many variables and potential setbacks in Bitcoin mining operations. Such claims present the investment as more liquid and secure than it actually is.
  - The Plaintiff was led to believe that their investment was not only safe but also quickly recoverable. This false sense of security prompted the Plaintiff to invest more than they would have if they were fully aware of the actual risks involved.

47. Plaintiff relied on Defendants' misrepresentations and omissions in deciding to invest and subsequently maintain his investment in the cryptocurrency mining venture. This reliance was reasonable and justified, given the information provided by Defendants and the context in which it was presented. Specifically, Defendants:

a. Knew about significant delays in the supply chain for the mining equipment, which could impact the timely delivery and setup of the miners. Despite this, Defendants assured investors of a Q1-Q2 2022 deployment without disclosing the potential for delays, thereby misleading investors about the project timeline

b. Were aware of the high operational costs and potential instability of electricity sources. Although they promoted the use of nuclear energy and the development of solar panels, Defendants did not disclose the risks associated with securing these

energy sources or potential cost fluctuations, which could significantly affect

operational costs and profitability

c.  Understood the challenges associated with the procurement of mining equipment.

While they purchased high-quality miners at $8,000 per machine and stated current

market prices were between $10,500 and $11,000, they did not inform investors about

the difficulties in sourcing these machines from resellers, which could lead to higher

acquisition costs and impact overall profitability.

48.  Plaintiff's reliance on Defendants' fraudulent misrepresentations and omissions was to

Plaintiff's detriment. As a direct and proximate result of his reliance on Defendants'

fraudulent conduct, Plaintiff has suffered significant financial losses, including but not

limited to, the loss of his investment principal and the foregone opportunity to invest

those funds elsewhere.

49.  By reason of the foregoing, Plaintiff has been damaged in an amount to be proven at trial,

for which he is entitled to recover compensatory damages from Defendants. Furthermore,

due to the intentional and deceitful nature of Defendants' actions, Plaintiff seeks punitive

damages to punish Defendants and deter such conduct in the future.

## **COUNT IV**

(Breach Of Contract)

50.  Plaintiff incorporates Paragraphs 1 through 49, inclusive, of this Complaint, as though fully

set forth herein.

51.  At various times commencing in November 2021, Plaintiff and Defendants entered into

an agreement ("the Contract") whereby Plaintiff agreed to invest money in a

cryptocurrency mining venture operated by Defendants. This Contract was established

through Defendants' solicitations, representations, and promises made via email communications, webinars, and other promotional materials, which constituted an offer that Plaintiff accepted by providing investment funds to Defendants.

52. The terms of the Contract, as understood by Plaintiff based on Defendants' representations, included, among others, the following obligations of Defendants:

   a. To use Plaintiff's investment funds solely for the purpose of purchasing and operating cryptocurrency mining equipment.

   b. To operate the cryptocurrency mining venture in a manner that aimed to generate profits for investors, including Plaintiff, within the projected time frames and profitability rates explicitly stated or implied by Defendants.

   c. To provide timely and accurate updates regarding the operation's status and financial performance to Plaintiff.

53. Defendants breached the Contract by failing to fulfill their obligations as outlined above, specifically by:

   a. Misappropriating or mismanaging Plaintiff's investment funds contrary to the stated purposes.

   b. Failing to operate the cryptocurrency mining venture in a manner consistent with the representations made to Plaintiff, resulting in the venture's failure to generate the promised profits.

   c. Failing to provide Plaintiff with accurate and timely information regarding the venture's operational status and financial performance, and in many instances, providing false or misleading updates. Specifically:

- On November 23, 2021, Defendants announced they had secured $16 million in funding for the cryptocurrency mining project. By December 3, 2021, they claimed the fundraising total had increased to $30 million. These announcements were misleading as they presented a false sense of security and market trust without disclosing the actual financial challenges and the speculative nature of the venture.

- On February 1, 2022, Defendants falsely asserted they had secured a new mining facility that would significantly reduce operational costs and increase profitability. This update was misleading as the promised benefits did not materialize, and the actual status and terms of the facility were not fully disclosed.

- On March 23, 2022, Defendants announced they had raised $40 million and outlined plans for deploying miners across strategic locations. This claim misled investors about the scale and potential success of the operation, as the actual deployment faced significant logistical and operational challenges that were not disclosed to investors.

54. As a direct and proximate result of Defendants' breach of the Contract, Plaintiff has suffered significant financial damages. The losses include the principal amount invested and the expected profits that were not realized due to Defendants' misconduct and breach of their contractual obligations.

55. Plaintiff relied on Defendants' representations and promises in entering the Contract and would not have invested his funds but for Defendants' assurances regarding the operation and profitability of the cryptocurrency mining venture.

56. Plaintiff has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the Contract.

## **COUNT V**

(Illinois Consumer Fraud and Deceptive Business Practices Act)

57. Plaintiff incorporates Paragraphs 1 through 56, inclusive, of this Complaint, as though fully set forth herein.

58. This Count is asserted under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.) ("the Act"), which prohibits unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, in the conduct of any trade or commerce.

59. Defendants engaged in deceptive acts or practices in violation of the Act by:

    a.  Making false representations and statements regarding the nature, profitability, and risk associated with the cryptocurrency mining venture.

    b.  Failing to disclose material facts about the operation's viability, the use of investor funds, and the realistic potential for returns, which were necessary for Plaintiff and other consumers to make informed decisions about their investments.

    c.  Deliberately omitting information about the significant risks and challenges faced by the venture, which were known to Defendants but concealed from Plaintiff and others.

60. Defendants' actions as described herein were designed to mislead Plaintiff and the investing public, inducing them to invest under false pretenses and to maintain their investments based on fabricated success metrics and operational achievements.

61. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff suffered significant financial harm. The harm includes the loss of the investment principal and the opportunity costs associated with investing those funds elsewhere.

62. Defendants' conduct was intentional and calculated to deceive consumers, including Plaintiff, and represents a flagrant violation of the consumer protection objectives of the Act.

63. Under the Act, Plaintiff is entitled to recover actual damages, including the loss of his investment and any additional damages the Court finds just and proper. Furthermore, the Act permits the recovery of attorney's fees and costs, providing a further basis for relief in this action.

## <u>COUNT VI</u>

(Negligent Misrepresentation)

64. Plaintiff incorporates Paragraphs 1 through 63, inclusive, of this Complaint, as though fully set forth herein.

65. Defendants, in the course of their business, supplied false information for the guidance of Plaintiff and others in their investments, concerning the cryptocurrency mining venture.

66. At various times, Defendants represented to Plaintiff that the investment was substantially less risky than it actually was, that it would produce specific returns, and that certain operational milestones had been achieved, all of which were false and known by Defendants to be false or recklessly disregarded for their truth or falsity.

67. Defendants had a duty to provide accurate and truthful information to Plaintiff, given their positions as promoters and managers of the investment venture, and knowing that Plaintiff would rely on the information provided in making investment decisions.

68. These representations were made negligently and without the care expected of individuals and entities in Defendants' positions. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information, leading Plaintiff to rely on them to his detriment.

69. Plaintiff justifiably relied on Defendants' misrepresentations in deciding to invest in the cryptocurrency mining venture. This reliance was reasonable given the Defendants' positions and the nature of the representations made.

70. As a direct and proximate result of relying on these negligent misrepresentations, Plaintiff suffered significant financial losses, including but not limited to the investment made in the venture, and the lost opportunity for those funds to be invested elsewhere.

71. Plaintiff seeks damages for the losses incurred as a result of Defendants' negligent misrepresentation, including the amount of the investment, interest, consequential damages, and any other relief the Court deems just and proper.

## COUNT VII

(Unjust Enrichment)

72. Plaintiff incorporates Paragraphs 1 through 71, inclusive, of this Complaint, as though fully set forth herein.

73. Defendants have been unjustly enriched at the expense of Plaintiff and other investors. Defendants received and continue to hold funds from Plaintiff, which were obtained under the pretenses outlined in the previous counts of this complaint.

74. Defendants accepted and retained these funds under circumstances that make it unjust for them to keep the benefits without compensating Plaintiff. Specifically, the funds were obtained through misrepresentations, fraudulent conduct, and breaches of contract, as previously alleged.

75. It would be inequitable and unjust for Defendants to retain the benefits received from Plaintiff without providing the promised returns on investment, given the misrepresentations and breaches of contract as alleged herein.

76. Under the principles of equity and justice, Defendants are obligated to disgorge all profits, benefits, and other compensation obtained from Plaintiff and other similarly situated investors through their deceptive practices and breaches of duty.

77. Plaintiff seeks restitution from Defendants in the form of a full return of all funds invested, as well as any profits or benefits derived from those funds, along with pre-judgment and post-judgment interest, costs of litigation, and any other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Vince Faridani respectfully requests that this Court grant the following relief:

1. For the Court to award Plaintiff compensatory damages in an amount to be determined at trial, but sufficient to compensate Plaintiff for the financial losses sustained as a direct and proximate result of Defendants' actions, including but not limited to the loss of investment principal, lost profits, and any additional financial harm suffered by Plaintiff.

2. Where applicable, particularly in relation to Counts alleging fraud, deceit, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, for the Court to award punitive damages against Defendants in an amount sufficient to punish Defendants for their wrongful acts and to deter similar conduct in the future.

3. For the Court to issue an injunction, where appropriate, to prohibit Defendants from continuing to engage in the unlawful practices detailed in this complaint, thereby protecting Plaintiff and the public from future harm.

4. Under the count of Unjust Enrichment, for the Court to order Defendants to disgorge all profits, benefits, and other compensation obtained through their unjust enrichment at the expense of Plaintiff and other investors.

5. For the Court to order Defendants to make full restitution to Plaintiff and all similarly situated investors for any losses incurred as a result of Defendants' actions.

6. For the Court to award pre-judgment and post-judgment interest on any monetary awards at the maximum rate allowed by law, from the date each loss was incurred until the date of payment.

7. Plaintiff requests that the Court permit all necessary actions related to this case, including but not limited to attendance at hearings, submission of documents, and communication with the Court and Defendants, to be conducted remotely via electronic means where feasible.

8. For the Court to order Defendants to pay all costs associated with the prosecution of this action, including reasonable attorneys' fees, expert witness fees, and other expenses as allowed under the Illinois Consumer Fraud and Deceptive Business Practices Act and other applicable laws.

9.     For the Court to prohibit Defendants from offering or selling securities in the future, given their demonstrated pattern of deceit and violations of securities laws.

10.     For the Court to order an appropriate mechanism for monitoring Defendants' compliance with the terms of the Court's orders, including the appointment of a special master or overseer if deemed necessary.

11.     For the Court to grant such other and further relief as it may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

The Plaintiff respectfully demands trial by jury of all issues so triable.

## CERTIFICATE OF SERVICE

I Vince Faridani, certify that on 08-08-2024, a true and correct copy of the foregoing Complaint was served upon the following parties by certified mail.

> Mckenna Capital LLC
> 2516 Waukegan Rd #399
> Glenview IL 60025
> Ryan Mckenna,
> 2516 Waukegan Rd #399
> Glenview IL 60025
> Sean McKenna,
> Arlington Heights, IL
> Touzi Capital LLC
> 340 S Lemon Ave #8284,
> Walnut, CA 91789
> Eng Taing,
> San Marcos, CA

Date: 08-08-2024

Respectfully Submitted,

By:

/s/Vince Faridani

_____

Vince Faridani

Pro Se Plaintiff

8471 Strom Park Drive

Melbourne, FL 32940

Phone: 954-774-1391

Email: VFaridani@hotmail.com

Original of this is filed with:

**CLERK OF COURT**